UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REGINALD E. MARTIN,

    Petitioner,

v.

R. BARNES, Warden,

    Respondent.

Case No. 11-3075 WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Petitioner Reginald E. Martin seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2009, an Alameda County Superior Court jury found Martin guilty of first degree murder of Travis Vaughn and found true a firearm use enhancement; the jury found Martin not guilty of attempted murder of Kenshon Smith.[1] Martin received a sentence of 50 years-to-life in state prison. On direct appeal, the California Court of Appeal affirmed the conviction, and the California Supreme Court denied review. Martin filed a state habeas

---

[1] Facts relating to the attempted murder count are not discussed because they are not relevant to the claims raised in this action.

petition in the state supreme court, which denied the petition on February 15, 2012. This federal habeas petition followed.

Evidence presented at trial showed that in 2001, Martin shot and killed Vaughn outside Martin's residence over money and drugs. Particularly relevant were statements of three individuals gathered during the investigation of Vaughn's murder. Martin's sister, Rashonda Martin, told the police that on the night of the murder, her brother asked her to bring him his gun, which was under his bed, that she did so, and that she witnessed him shoot Vaughn. Paul Scott, an acquaintance of both Martin and Vaughn, and Martin's father each gave statements to the police that Martin had told them that he shot Vaughn. At trial, all three witnesses professed a reluctance to testify and recanted their pre-trial statements. The prosecutor played the taped statements of the three witnesses to the jury, which was also provided copies of the transcripts of these interviews. (Cal. Ct. App. Opinion ("Op."), pp. 2-6; Ans. Ex. 11.)

As grounds for federal habeas relief, Martin claims that: (1) the prosecution withheld exculpatory evidence; and (2) his due process rights were violated by the admission of evidence that he possessed firearms not used in the offense.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

**DISCUSSION**

I. *Brady* **Violation**

Martin claims that he was not given an opportunity to review "all the police report

3

1 nor the eye witness statement." (Pet. 5.) He alleges that he was provided "only small
2 amounts" of what the District Attorney presented at trial, including witness statements,
3 "especially the 911 emergency call[,] [b]allistic reports, and any and all photos and
4 documents." (*Id.*) He asserts that these delinquencies amount to a *Brady* violation. (*Id.*)
5 Respondent contends that this claim is without merit.[2]

6 In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the
7 suppression by the prosecution of evidence favorable to an accused upon request violates
8 due process where the evidence is material either to guilt or to punishment, irrespective of
9 the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since
10 made clear that the duty to disclose such evidence applies even when there has been no
11 request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty
12 encompasses impeachment evidence as well as exculpatory evidence, *United States v.*
13 *Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if "there is a reasonable
14 probability that, had the evidence been disclosed to the defense, the result of the
15 proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A
16 reasonable probability does not mean that the defendant 'would more likely than not have
17 received a different verdict with the evidence,' only that the likelihood of a different result
18 is great enough to 'undermine confidence in the outcome of the trial.'" *Smith v. Cain*, 132
19 S. Ct. 627, 630 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "[E]vidence
20 impeaching an eyewitness may not be material if the State's other evidence is strong
21 enough to sustain confidence in the verdict." *Smith*, 132 S. Ct. at 630-31 (finding
22 impeachment evidence of prosecution's sole witness material); *accord Agurs*, 427 U.S. at
23 112-13 & n. 21. And the mere possibility that undisclosed information might have been
24 helpful to the defense or might have affected the outcome of the trial, does not establish

---

[2] Respondent points out that the state court did not reach the merits in denying Martin's claim because it found that the petition was procedurally defective. (Ans., Ex. 15.) However, Respondent accepts that the claim was exhausted notwithstanding the state court's decision and answers on the merits. (Ans. at 12.)

4

materiality under *Brady*. *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013).

In sum, for a *Brady* claim to succeed, petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued).[3] *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). *cf. Towery v. Schriro*, 641 F.3d 300, 309-10 (9th Cir. 2010) (no habeas relief on *Brady* claim under § 2254 where state court reasonably determined "beyond a reasonable doubt that the prosecutor's misconduct did not affect the verdict"). Applying these legal principles to this case, the Court concludes that there was no *Brady* violation because Martin fails to show the first and second criteria: (1) that the evidence was either exculpatory or impeaching, and (2) that it was suppressed by the prosecution. *Banks*, 540 U.S. at 691.

First, Martin's general allegations fail to show how specific items at issue – *i.e.*, the witness statements, the 911 emergency calls, ballistic reports, and "any and all photos and documents" – were either exculpatory or impeaching. In fact, Martin has failed to explain the exculpatory value of any evidence that was allegedly suppressed.

Second, there is no evidence that the prosecution actually suppressed any material evidence. As Respondent points out, Martin was represented by counsel at trial. The record shows that counsel had access to and was familiar with all of the challenged evidence at trial. (Ans. at 14.) For example, counsel's statements during pretrial *in limine* motions indicate that counsel was familiar with the witness statements. (2RT 35-81.)[4] The exhibits and evidence at trial included the photographs, witness statements, ballistic reports, and numerous police reports. (2CT 411-13.) There is no suggestion in the record

---

[3] For the purpose of *Brady*, the terms "material" and "prejudicial" have the same meaning. *United States v. Kohring*, 637 F.3d 895, 902 n.1 (9th Cir. 2011).
[4] 2 RT 35-81 refers to the Reporter's Transcript, Volume 2, pages 35 through 81. The Court will use a similar citation form for other references to the Reporter's Transcript and to the Clerk's Transcript ("CT").

5

that counsel did not have sufficient access to such material or that it was withheld from her at trial; defense counsel never indicated surprise or lack of access to materials during the conference on admission of exhibits into evidence. (11RT 1401-31.) Indeed, counsel repeatedly referred to witness statements, police reports, and ballistics reports in her cross-examination of Sergeant Rullamas, (13RT 1640-93, 14RT 1698-755), and she had several police reports marked during her questioning, (2CT 413; 10RT 1204, 1258, 1309).

Martin also claims that he did not receive the 911 calls. This claim is also factually without merit. The record shows that Barbara Cockerham, the primary witness who called 911 after she heard the shots fired and saw the victim lying on the street, testified at trial about her 911 call. (6RT 351-73.) It is obvious from defense counsel's subsequent questioning of Sergeant Rullamas that she was familiar with the content of the 911 calls made by others who heard shots. (14RT 1726-30.) Although the 911 calls themselves were not played at trial, counsel was clearly familiar with the contents. Martin has failed to show that any of the material identified by Martin was suppressed by the prosecution.

In sum, the record shows that the alleged evidence at issue was fully disclosed to Martin and his trial counsel. There was no constitutional violation. Accordingly, this claim has no merit and is DENIED.

**II.   Admission of Evidence**

Martin claims that the trial court erred by permitting the prosecution to introduce evidence that Martin possessed firearms that were not identified as the murder weapon. He asserts that this evidence was unduly prejudicial because it was propensity evidence that portrayed him as a person who was likely to have shot the victim. (Pet. 7.)

The state appellate court on direct review rejected this claim as meritless because the factual premise of Martin's contention was incorrect:

> [Martin] contends that the trial court committed prejudicial error, amounting to a violation of his right to due process under the federal Constitution and resulting in a miscarriage of justice under the state Constitution, when it admitted witness testimony that [Martin] possessed a

6

> handgun which was not positively identified as the murder weapon. Specifically, [Martin] challenges: (1) the introduction of Paul Scott's pre-trial statement that he saw [Martin] with a .357 firearm three or four months before the Vaughn murder; and, (2) the introduction of Martin Senior's pre-trial statement that he was familiar with a .44 magnum firearm owned by [Martin]. [Martin] characterizes this testimony as evidence of criminal propensity, which the trial court erroneously admitted under Evidence Code section 1101, subdivision (b). We find [Martin]'s contentions meritless.
>
> Preliminarily, Martin Senior's statement [Martin] told him that he [Martin] shot the murder victim three times with a .44 Magnum was a confession to the crime and properly admissible under Evidence Code section 1200. In relating [Martin]'s confession, however, Martin Senior also stated, "I'm familiar with the gun. I have seen the gun. I have held the gun in my hand." It may be inferred from the preceding remarks that Martin Senior had access to the .44 firearm because it was in [Martin]'s possession. Likewise, Paul Scott stated he saw [Martin] in possession of a .357 handgun a few months before Vaughn's murder. Further, evidence adduced at trial established that the murder weapon was either a .357 or .38 handgun, and that both those weapons can easily be mistaken for a .44 handgun. Therefore, whereas neither Martin Senior's statement nor Paul Scott's statement established that the weapon they saw in [Martin]'s possession "necessarily was the murder weapon, it might have been." (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1052 (*Carpenter*).) Accordingly, their statements "did not merely show that [Martin] was a person who possesses guns," but showed that near the time of the murder he possessed a gun that might have been the murder weapon. (*Ibid.*) "The evidence was thus relevant and admissible as circumstantial evidence that he committed" the crime. (*Ibid.*)
>
> In sum, because evidence that a witness saw [Martin] in possession of a gun that could have been the murder weapon is relevant and admissible as circumstantial evidence of commission of the crime (*Carpenter*, *supra*, 21 Cal.4th at p. 1052), the trial court did not err in admitting the statements of Martin Senior and Paul Scott relating to [Martin]'s possession of firearms. Moreover, because we conclude the trial court's evidentiary rulings were correct in this matter, [Martin]'s attendant constitutional claims also fail. (See *People v. Panah* (2005) 35 Cal.4th 395, 482, fn. 31.)

(Ans., Ex. 11 at 13-14.)

Martin's claim is without merit. The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such

7

magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Substantively, this claim has no merit. The California Court of Appeal did not reach a decision that was contrary to, or involved an unreasonable application of, clearly established law. The state court ruled that the "evidence that a witness saw [Martin] in possession of a gun that could have been the murder weapon is relevant and admissible as circumstantial evidence of commission of the crime." *See supra* at 7. The jury could make the permissible inference that Martin was in possession of a firearm that may very well have been the murder weapon. *See Jammal*, 926 F.2d at 920.

Furthermore, the claim on its face is without merit because the United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67

8

(9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming *Alberni*). *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law).

The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. Accordingly, the claim is DENIED.

## CONCLUSION

The state courts' adjudication of Martin's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** January 13, 2014



WILLIAM H. ORRICK
United States District Judge